**In the Matter of Homer JARVIS.**

**No. C8–88–1785.**

Court of Appeals of Minnesota.

Dec. 13, 1988.

Leif P. Carlson, Winzenburg & Halverson, Mankato, for appellant Jarvis.

Hubert H. Humphrey, III, Atty. Gen., Mary L. Stanislav, Sp. Asst. Atty. Gen., St. Paul, for respondent Medical Director of Minnesota Sec. Hosp.

Heard, considered and decided by WOZNIAK, C.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

HUSPENI, Judge.

The Medical Director of the Minnesota Security Hospital petitioned for authorization to administer neuroleptic medications to Homer Jarvis, who has not consented to such treatment. Jarvis has been committed as a mentally ill and dangerous person since 1977. The trial court appointed counsel and a guardian ad litem for Jarvis. At the hearing on the petition, Jarvis sought appointment of two examiners. His motion was denied. By order on July 15, 1988, the trial court approved the administration of medications. We reverse and remand for a new hearing.

## FACTS

Jarvis is 54 years old. He was committed as a mentally ill and dangerous person in 1977, after he shot and killed his sister. He has been diagnosed as suffering from a paranoid disorder or from schizophrenia, paranoid type. (The chief distinguishing feature is the presence of hallucinations with schizophrenia.) Jarvis has steadfastly refused all treatment efforts and denies his mental illness. His previous challenges to forced medication resulted in a supreme court decision establishing procedures to be followed in non-emergency situations where a committed patient refuses neuroleptic medications. *Jarvis v. Levine*, 418 N.W.2d 139 (Minn.1988).

Jarvis has become increasingly violent over the past year. He has attacked patients and staff at the security hospital, sometimes causing serious physical injury. He is frequently verbally abusive and attempts to provoke others. He has been placed in locked seclusion, where his condition is not expected to improve. He is not considered competent to make decisions concerning his own treatment.

The treatment review panel (a multi-disciplinary group of professionals not directly involved in treating Jarvis, which reviews patient treatment issues) has approved the use of neuroleptic medication for Jarvis four times in the past year. Alternative therapies have been tried, but continue to be unsuccessful. In June 1988, the Medical Director of the Minnesota Security Hospital petitioned the trial court for an order authorizing forcible administration of medications.

By order on June 30, the trial court appointed an attorney (who had not previously represented Jarvis) to represent Jarvis at the hearing on the petition, but Jarvis refused to speak with his counsel or permit him to review his medical records. Two days before the scheduled hearing, counsel had still not been allowed to review the medical records to prepare. The court issued an additional order affording counsel access to the records on the eve of trial.

A guardian ad litem was also appointed, and he interviewed Jarvis, reviewed the medical records, and filed a report in support of the application for authorization of neuroleptic medications.

Jarvis refused to attend the adversary hearing on the petition on July 15, but was represented by his appointed counsel at that hearing. Psychiatrist Charles Van Valkenburg, who has treated Jarvis since January 1988, testified as to the serious deterioration in his patient's condition. Prior trials of medication have produced sig-

nificant improvement and Dr. Van Valken-burg testified that the anticipated benefits of neuroleptic medications clearly outweigh the risks.

At the close of the testimony Jarvis' counsel moved the trial court to appoint a "second examiner" to diagnose his client's mental illness and an additional doctor of pharmacology to offer an opinion on the proposed medications. Counsel relied on recent amendments to Minn.Stat. § 253B.17 in urging the court to appoint the examiners. Counsel for the medical director (the petitioner below) opposed the request, arguing there is no statutory authorization for such appointments and the request was untimely.

The trial court denied Jarvis' motion, but indicated it might have granted the motion if made before the hearing. The trial court immediately announced its findings and approved the administration of neuroleptic medications. On appeal, Jarvis does not challenge the findings, but argues that he was entitled to appointment of a "second examiner."

### ISSUE

Did the trial court err in denying the patient's motion for appointment of additional experts?

### ANALYSIS

The Minnesota Supreme Court held that a treating facility seeking to administer neuroleptic medications without the consent of a committed person must comply with the so-called *"Price* procedure." *Jarvis v. Levine,* 418 N.W.2d 139, 147 (Minn. 1988). The reference is to *Price v. Sheppard,* 307 Minn. 250, 239 N.W.2d 905 (1976). There, the supreme court held that committed patients have a constitutional right to privacy and the state must justify treatment methods which constitute a substantial intrusion on the patient's personal autonomy. Specifically, the court ruled that the state must, before performing psychosurgery or electroconvulsive therapy, obtain court approval for such treatment. *Id.* at 262–63, 239 N.W.2d at 913. If the patient refuses the treatment or is incom-

petent, the medical director must petition the court. *Id.* The court must also appoint a guardian ad litem for the patient. *Id.* After an adversary proceeding, the court must "determine the necessity and reasonableness of the prescribed treatment." *Id. Jarvis* extended the application of this procedure to neuroleptic medications, which are involved in this case. *Jarvis,* 418 N.W.2d at 147.

In *Price,* the supreme court listed factors to be considered in balancing "the patient's need for treatment against the intrusiveness of the prescribed treatment." *Price,* 307 Minn. at 262–63, 239 N.W.2d at 913. The court should consider the extent and duration of the anticipated improvements, the risk of side effects, whether the treatment is experimental, acceptance of the treatment method in the medical community, the extent of intrusion into the patient's body, and the patient's competence to determine the desirability of the treatment. *Id.* The trial court's findings in this case specifically enumerate these factors.

Both *Price* and *Jarvis* contemplate preliminary review of proposals for intrusive treatment at the hospital level. As the *Jarvis* opinion indicated, it may be very difficult to obtain court approval for proposed treatment if the treating physician is unable to obtain approval of his or her peers. "If, on the other hand, both the treatment review panel and the hospital review board approve of the proposal by the treating physician, court approval should be quickly forthcoming with little difficulty." *Jarvis,* 418 N.W.2d at 149. Despite such approval within the hospital, the supreme court held the patient is also entitled to additional scrutiny of the application by the courts in an adversary hearing.

Neither the original procedures adopted in *Price* nor the procedures extended to neuroleptic medications in *Jarvis* explicitly require the appointment of additional experts at the patient's request. The administrative rules promulgated for cases requiring judicial approval of certain treatments do not address the issue of such additional experts. *See* Minn.R. 9515.-

0200–.0800 (1987). Jarvis relies upon the 1988 legislature's modification of a critical provision of the commitment act.

Minn.Stat. § 253B.17 permits patients (except those committed as mentally ill and dangerous) to petition the court "for an order that the patient is not in need of continued institutionalization or for an order that an individual is no longer mentally ill, mentally retarded, or chemically dependent; or for any other relief as the court deems just and equitable." Minn.Stat. § 253B.17, subd. 1 (1986). That subdivision was recently amended to permit patients who *are* committed as mentally ill and dangerous to petition the court "for a hearing concerning the administration of neuroleptic medication." 1988 Minn.Laws ch. 689, art. 2, §§ 119–20.

The amendment is a response to the supreme court's opinion in *Jarvis*, which was released on January 15, 1988. The amendment specifies that a hearing on a patient's petition concerning medications "may also be held pursuant to sections 253B.09 and 253B.12." *Id.* (Those sections govern initial commitment and review hearings.)

The statute requires the trial court must, in connection with a patient's petition under section 253B.17, appoint an examiner (a licensed physician or licensed consulting psychologist) to report on diagnosis and treatment. Minn.Stat. § 253B.17, subd. 3 (1986). Upon request, the court must also "appoint a second examiner of the patient's choosing." *Id.* (Patients (or proposed patients) may also request a second examiner in connection with initial commitment proceedings, Minn.Stat. §§ 253B.07, subd. 3 (1986), 253B.18, subd. 1 (1986); when an initial commitment as a mentally ill, mentally retarded, or chemically dependent person is reviewed, Minn.Stat. § 253B.12, subd. 3 (1986); and in connection with some proceedings before the judicial appeal panel (sometimes called the supreme court appeal panel) involving mentally ill and dangerous patients, Minn.Stat. § 253B.19, subd. 2 (1986).)

 Respondent argues that the statutory guarantee of a second examiner is limited to hearings held pursuant to a *patient's* petition, noting the petition in this case was brought not by the patient but by the medical director of the treating facility. We cannot agree.

All *Jarvis* petitions to initiate involuntary administration of medications will, necessarily, be brought by treating professionals. However, the legislature has specified that patients may also bring medication issues before the courts and obtain a second examiner in connection with such hearings. By respondent's analysis, the patient would not be entitled to an examiner at a hearing for authorization to initiate medications. However, the patient could bring his own petition challenging the administration of medications at virtually the same time, and pursuant to the statute, would then be entitled to the appointment of a second examiner for purposes of that hearing. In effect, two hearings would be required, instead of the single one mandated by *Jarvis*.

The result urged by respondent ignores the legislative policy which guarantees the patient's right to an independent examiner throughout the commitment process. The supreme court did not intend that the *Jarvis* hearing be a mere "rubber stamp" for treatment decisions made by the hospital. The statutory amendment reflects the legislature's apparent recognition that the availability of a second examiner is critical to meaningful court review of a petition for involuntary administration of neuroleptic medications.

 The trial court in this case indicated it would likely have appointed an examiner if the patient's request had been timely made. We agree that a request for appointment of a second examiner must be promptly made. However, we believe the trial court erred in finding this request to be untimely. New counsel was appointed just two weeks before the scheduled hearing date. He was unable to speak to his client. He was permitted access to necessary medical records only on the eve of trial and only after obtaining an additional court order. There was virtually no time to explore the basis for the treating psychiatrist's choice of specific medications, al-

though counsel attempted, on cross-examination, to highlight the likely side effects and his client's own demonstrated sensitivity to medication. Intentional delay in requesting the second examiner should not be tolerated, but we believe the request in this case was timely made, under the circumstances.

■ While we concur in appellant's request for an additional opinion as to the propriety of the specific treatment for which court approval was sought, we are troubled by his request for an additional opinion as to diagnosis. The focus of this hearing was treatment, as it was the focus of the *Price* and *Jarvis* decisions, and as it remains the focus of the commitment act. *See* Minn.Stat. § 253B.03, subd. 7 (1986) (right to treatment directed at rendering further institutionalization unnecessary).

Appellant's mental illness has been variously diagnosed as schizophrenia and as a paranoid disorder. The supreme court has recognized the lack of clarity regarding this patient's diagnosis. *Jarvis*, 418 N.W. 2d at 140. Arriving at a working diagnosis is a function for Jarvis' treatment team, and not a function of the courts. *See* Minn.Stat. §§ 253B.18, subd. 2, 253B.12, subd. 1(1). The function of the trial court in this case was to determine whether nonconsensual intrusive medical treatment was appropriate. The trial court correctly refused to appoint an additional examiner on the issue of diagnosis.

■ Finally, we also note that respondent has reprinted portions of Jarvis' medical records in the appendix to his brief. Appellant has made no objection. However, we have previously stressed the need to prevent public dissemination of private data from medical records. *In re Morton*, 386 N.W.2d 832, 835 (Minn.Ct.App.1986). Counsel properly withdrew the medical records, admitted in evidence at the hearing, from the public file to protect the patient's privacy. If it is necessary to submit these materials for appellate review, they should be set forth in a separately bound "confidential appendix." Incorporation of the medical records into the respondent's brief is inappropriate.

DECISION

Because we hold the patient is entitled to a second examiner on the question of involuntary medication, and that examiner was timely requested under the circumstances of this case, we reverse. The matter is remanded for a new hearing on the medical director's petition for authorization to administer neuroleptic medications.

REVERSED AND REMANDED.